UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| HELEN DOONA, )<br>  Plaintiff, )<br> )<br>v. )<br> )<br>ELAINE CHAO, SECRETARY, )<br>UNITED STATES DEPARTMENT )<br>OF LABOR, )<br>  Defendant, )<br> ) | CIVIL ACTION NO.: 04-12372-PBS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**I.   INTRODUCTION**

Plaintiff works for the Employee Benefits Security Administration ("EBSA") within the Department of Labor ("Agency") and alleges that the EBSA discriminated against her. This civil action is based on two administrative Equal Employment Opportunity ("EEO") complaints.[1] The first EEO complaint includes both the reassignment of cases by Plaintiff's supervisor and a challenge to the rating of "Meets" on Plaintiff's annual performance appraisal given by her supervisor for the review period April 1, 2000 through March 31, 2001. In the first EEO complaint, Plaintiff alleges purported discrimination on the basis of age, gender, marital status, parental status, and reprisal for previous EEO activity. The second EEO complaint stems from Plaintiff's non-selection for a Senior Investigator, GS-13 position. In the second EEO complaint, Plaintiff alleges purported discrimination on the basis of age, gender, national origin, marital status, parental status, and reprisal for previous EEO activity.

---

[1] The first EEO complaint is referenced as CRC Case No. 02-01-060 ("Complaint #1"); the second EEO complaint is referenced as CRC Case No. 02-01-106 ("Complaint #2"). Both of these EEO complaints form the basis of Plaintiff's district court complaint, which is the subject of this motion. Because Plaintiff's district court complaint is confusing, her allegations are more easily understood by reviewing the underlying EEO complaints, attached as Exhibits G and J, respectively.

As set forth more fully below, the relevant material facts are not in dispute, and the record evidence does not support Plaintiff's contentions.  Plaintiff cannot establish a prima facie case of discrimination based on gender, sex, national origin, marital status, parental status, and reprisal for previous EEO activity.  Furthermore, the EBSA has given legitimate non-discriminatory reasons for the reassignment of cases, the "Meets" rating on Plaintiff's performance appraisal, and the appointment of other people to the Senior Investigator GS-13 positions.  Plaintiff cannot produce any evidence demonstrating that these reasons are a pretext for discrimination.  Thus, the Court should allow the government's Motion for Summary Judgment.

## II.     STATEMENT OF FACTS[2]

Plaintiff was over the age of forty at the time of the alleged incidents.  See Plaintiff's District Court Complaint (Exhibit A, p. 3).[3]  Plaintiff, a female of Irish-American origin, is a widow and mother of three children.  Id. at 3-4.  She worked as an EBSA Investigator, GS-12/8 since July 7, 1987.  Id. at 1.  In her capacity as an employee of EBSA, Plaintiff has also been an Agency Shop Steward for the AFGE Local ("Union") since the early 1990s.  Id. at 2.

### A.     Case Reassignment and "Meets" Rating on Performance Appraisal

In late 2000 and early 2001, Plaintiff took several extended leaves of absence for various reasons.  See Work Hours Log (Exhibit B).  When she returned from one approved leave of absence on May 21, 2001, she learned that a few of her cases had been reassigned to other investigators.  This is the first part of Plaintiff's EEO complaint #1.  See Plaintiff's Answers to Interrogatories (Exhibit C, p. 31).  Philip Tanner, Plaintiff's first-line Supervisor, reassigned five

---

[2] The government incorporates herein its Statement of Undisputed Material Facts filed simultaneously with this Memorandum.

[3] Referenced Exhibits are attached and incorporated herein.

2

of Plaintiff's cases on May 17, 2001 in order to meet deadlines for overaged cases, or cases that are more than 18 months old from the date the case was opened. See Philip Tanner ("Tanner") Affidavit, Complaint #1 (Exhibit D, p. 2); see also Doona Deposition (Exhibit Q, p. 67). At that time, Plaintiff had the highest inventory of overage cases within Tanner's group. See Exhibit D, p. 2. Pursuant to the Program Operation Plan, the Agency mandates that each Regional Office maintain an overage case inventory at the end of the fiscal year of no more than 25% of the total number of cases open. See Program Operation Plan Guidance for FY 2001 (Exhibit E, p. 3).

Of the five cases transferred, all had few time charged to them, which means that they were in the early stages of investigation. See Exhibit D, p. 3. Three of the five cases were reassigned to males and two of the five were reassigned to females. See Reassignment Case List (Exhibit F, p. 1). Also Plaintiff was not the only person to have cases reassigned on May 17, 2001. Id. Between May 1, 2001 and September 30, 2001, there were twenty-six cases reassigned within Tanner's group for various reasons.[4] Id. at 1-2.

The second portion of Plaintiff's first underlying EEO Complaint challenges the "Meets" rating on her annual Performance Appraisal for the time period April 1, 2000 to March 31, 2001. See Exhibit G, p. 1, 75-79. Tanner, Plaintiff's rating official, gave Plaintiff a overall rating of "Effective," which included an "Exceeds" rating for the subcategory of Investigative Productivity, a "Meets" rating for the subcategory of Quality of Investigations, and a "Meets" rating for the subcategory of Timeliness with a narrative describing Plaintiff's eight overage cases. See Exhibit G, p. 75-79. In the prior three years, Plaintiff received "Superior" ratings. Id. at 19-61. During the same evaluation period in which Plaintiff challenges her performance

---

[4] These reasons include: needing to allocate resources in order to achieve goals and meet deadlines, receiving an internal promotion, transferring to another division, and needing to meet the deadline for HIPAA review. Id.

3

appraisal, five of six other employees in Tanner's group also received overall "Effective" ratings, including a "Meets"" on the Timeliness subcategory with narratives conveying that the investigators had several overaged cases.[5]  See Performance Appraisals (Exhibit H).

On February 26, 2002, Plaintiff filed a formal EEO complaint against the Agency alleging discrimination on the basis of age, sex, marital status, parental status, and reprisal for prior EEO activity as a Union Steward when Plaintiff's supervisor reassigned several of her cases and gave her a "Meets"" rating on her performance appraisal.  See Exhibit G.

### B.     Non-selection for Senior Investigator GS-13 Position

On November 24, 2001, Plaintiff learned that she was not selected for one of six Senior Investigator GS-13 slots.  See Exhibit J, p. 7.  The six people selected were Emily Born (Female, Irish, age 30, no children), Anson Chiou (Male, Asian-American, age 35, no children), Mary Goreham (Female, Irish, age 34, no children), Robert Lang (Male, Irish, age 35, two children), Leslie O'Keefe (Female, Irish, age 47, one child), and Wilma Rosenberg (Female, Jewish, age 55, no children).  See James Benages Affidavit, Complaint #2 (Exhibit K, p. 3).

As the Regional Director of the Boston Region of EBSA, James Benages was the sole selecting official for the position.  See Exhibit K, p. 2.  The position was advertised pursuant to Vacancy Announcement number BOS 01-92, and the Position Description outlined the duties and requirements for the position.  See Vacancy Announcement (Exhibit L); Position Description (Exhibit M).  Tanner made no recommendations or decisions regarding the filling of this position.  See Tanner Affidavit, Complaint #2 (Exhibit N, p. 1).

---

[5] These employees included three males and two females, and two of those employees were over age forty.  Id.

The individuals selected for the Senior Investigator GS-13 Position on November 21, 2001 were highly qualified individuals each possessing unique attributes that made them stand out to the selecting official. See Exhibit K, p. 3. The position description put forth the relevant criteria used for selection by the hiring official. See Exhibit M. The selecting official is not authorized to hire on the basis of any criteria not described in the position description. Id. Of the six selectees along with Plaintiff, Plaintiff had the lowest "hit ratio" (ratio of cases closed with results versus total of cases closed) in 2001. Id. at 17. Plaintiff also had the highest "unit time" (time it takes to complete a case in number of days) compared to the six selectees. Id. at 18.

On May 2, 2002, Plaintiff filed a formal EEO Complaint against the Agency alleging discrimination on the basis of age, sex, marital status, parental status, and reprisal for prior EEO activity as a Union Steward and for filing a previous EEO Complaint when Plaintiff was not selected for a Senior Investigator GS-13 position on November 24, 2001.[6] See Exhibit J.

## III.  STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barbour v. Dynamics Research Corp, 63 F.3d 32, 36-37 (1st Cir.1995) (quoting Fed. R. Civ. P. 56(c)). In this respect, a "genuine" issue means that "the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, [is] sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." National

---

[6] Plaintiff alleged discrimination based on national origin in her informal EEO complaint, but not in her formal EEO complaint. See Exhibit J; Plaintiff's Informal EEO Complaint #2 (Exhibit O). Nevertheless, the Agency accepted the allegation of discrimination based on national origin for investigation. See Agency Letter of Investigation, Complaint #2 (Exhibit P).

5

Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).  Likewise, "'material' means that a contested fact has the potential to alter the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Smith v. F.W. Morse & Co, Inc., 76 F.3d 413, 428 (1st Cir. 1996).

Once the moving party makes a proper showing as to the "'absence of evidence to support the nonmoving party's case,' the burden of production shifts to the nonmovant." Dow v. United Bhd. of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993)(citation omitted).  "As to issues on which the summary judgment target bears the ultimate burden of proof, [she] cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995).  Moreover, a plaintiff cannot defeat a summary judgment motion through conclusory statements, mere speculation or conjecture. Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001); J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir. 1996); see Horta v. Sullivan 4 F.3d 2, 11 (1st Cir. 1993).  Even in employment discrimination cases, summary judgment is appropriate where the non-movant relies "upon conclusory allegations, improbable inferences, and unsupported speculation." See Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).[7]

**IV.    ARGUMENT**

Summary judgment should be granted because, based on the undisputed facts, Plaintiff cannot meet her burden of proving disparate treatment or that the Agency's proffered explanations are a pretext for discrimination.

---

[7] The standard of review here is de novo, see 29 C.F.R. § 1614.407, and not pursuant to the APA. See 5 U.S.C. § 551 et seq. The Court requested clarification on this point at the 16.1 conference.

Also, discrimination based on parental and marital status are not cognizable claims. Discrimination based on status as a parent was added to the list of discrimination prohibited by 42 U.S.C. § 2000e-2 in Executive Order No. 13152, but that order "does not confer any rights or benefit enforceable in law or equity against the United States or its representatives." EO No. 13152, § 11. Thus, Plaintiff's claim of parental status discrimination should be dismissed as a matter of law. Likewise, Plaintiff's claim of discrimination based on marital status should be dismissed as it is not a recognized claim.[8] See Hill v. Human Rights Comm'n, 735 F. Supp. 255, 256 n.2 (N.D.Ill. 1990); Long v. AT&T Info. Sys., 733 F. Supp. 188 (S.D.N.Y. 1990).

### A. PLAINTIFF'S COMPLAINT ALLEGING DISCRIMINATION IN THE REASSIGNMENT OF HER CASES AND THE "MEETS" RATING ON HER ANNUAL PERFORMANCE APPRAISAL SHOULD BE DISMISSED BECAUSE IT FAILS UNDER THE MCDONNELL DOUGLAS ANALYSIS

In order for a Plaintiff to show discrimination, she must first establish a prima facie case of discrimination by showing that: 1) she is a member of a protected group; 2) her employment situation is comparable to those of employees outside her group; and 3) she was treated differently than the individual who was not a member of her protected group. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Plaintiff is a woman over forty years old. See Exhibit A, p. 3. Plaintiff is employed by the Agency at the GS-12 level and acts as a Union Steward for employees in the Agency. Id. at 1-2. Defendant concedes for the purposes of this Motion that Plaintiff meets the first two parts of the McDonnell Douglas test. See 42 U.S.C. § 2000e-2(b); 29 U.S.C. § 633a. However, Plaintiff fails to meet the third part of the McDonnell Douglas test in that she was not treated differently than individuals who are not members of her protected groups with respect to the reassignment of her cases and the "Meets" rating on her

---

[8] Because the Equal Employment Opportunity Commission ("EEOC") does not recognize marital or parental status as an independent basis for discrimination, it did not accept those claims for investigation. See Agency Letter of Investigation, Complaint #1 (Exhibit I); see also Exhibit Q, p. 35.

7

annual performance appraisal. Plaintiff also fails to establish reprisal for previous EEO activity and that the Agency's actions were a pretextual. Thus, her claims should be dismissed.

### 1. Plaintiff Fails to Establish a Prima Facie Case of Age and/or Gender Discrimination

Prior to the reassignment of some of Plaintiff's cases on May 17, 2001, Plaintiff had taken several leaves of absence from work. See Exhibit B. Indeed, the day that Tanner reassigned Plaintiff's cases, Plaintiff was still on a leave of absence. Id. Tanner expressly explains that the official reason for the reassignment was that Plaintiff had been unable to work on her cases for several significant periods of time due to her leaves of absence. See Exhibit D, p. 2-3. Because of these absences, Tanner determined that the cases needed to be reassigned so that plaintiff could devote her time to her other cases and so that more progress could be made on the reassigned cases. Id.; see also Exhibit Q, p. 71-72. Plaintiff presents no specific evidence as to how the reassignment of these cases constitutes discrimination based on age and/or gender except to say in a conclusory fashion that "he reassigned them to male investigators." See Exhibit G, p. 3; Exhibit Q, p. 98. However, of the five cases transferred, two of them were assigned to females and three were assigned to males. See Exhibit F, p. 1. Because the cases were given to people within Plaintiff's protected group, Plaintiff cannot establish disparate treatment. See Keyes v. Sec'y of the Navy, 853 F.2d 1016, 1023 (1st Cir. 1988) (stating that to prove disparate treatment plaintiff must establish that the job was given to someone outside plaintiff's protected group).

Plaintiff contends that Tanner had "never before reassigned other investigators' casework." See Exhibit F, p. 1; Exhibit Q, p. 71. However, Agency records show that between May 1, 2001, and September 30, 2001, Tanner reassigned cases of several other investigators. Id. In fact, he reassigned a total of 26 cases during this time, only five of which were Plaintiff's.

Id.

As for the "Meets" rating on Plaintiff's annual performance appraisal, Plaintiff cannot establish that she was discriminated against because of her age or gender, and thus, her claims fail.[9] Agency records show that for the same appraisal period in which Plaintiff challenges her performance appraisal (between April 1, 2000 and March 31, 2001), five of six other employees in Tanner's group also received overall "Effective" ratings on their performance appraisals, which included a "Meets" ratings for Timeliness. See Exhibit H. Of these five employees who received "Effective" ratings, two were female and three were male; and three were over age forty. Id. at 1. In fact, one employee in this group was in the exact same position as the Plaintiff in all categories: she is a female, over forty, working at the GS-12 level, and received an overall "Effective" rating with a "Meets" rating for Timeliness, which included a narrative specifying the large number of overaged cases. Id. at 1, 32-36.

Accordingly, because Plaintiff has failed to prove that she was treated differently than other people who are not members of her protected groups, she fails to establish a prima facie case of age and/or gender discrimination as a matter of law. See Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002).

### 2. Plaintiff Fails to Establish a Prima Facie Case of Reprisal for Previous EEO Activity

Plaintiff asserts that she was retaliated against for her previous EEO activity as a Union Steward. See Exhibit A, p. 3. Plaintiff must establish that: 1) she participated in a protected activity; 2) that the Agency has taken an adverse action against her; and 3) that there is a causal

---

[9] As put forth in Section A(3), infra, even if the Court were to find that Plaintiff established a prima facie case of discrimination, the Agency's actions were not a pretext for discrimination.

9

connection between the protected activity and the adverse action. Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996). As to the first prong of the test, Plaintiff has failed to identify the alleged protected activities that she claims triggered unlawful discrimination. See Exhibit A, p. 3; Exhibit Q, p. 25. When asked in her deposition specifically which Union activities gave rise to the action, Plaintiff could not recall recent Union activities and only alluded to activities taking place several years ago (during early to mid-1990s). See Exhibit Q, p. 26-27. This vague assertion is inadequate to support a prima facie case. See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 335-38 & n.7 (1st Cir. 2005).

### i.     **Plaintiff does not allege any adverse actions**

Plaintiff's claims also fail the second prong of the test. A reassignment of cases is not significant enough to be considered an adverse action. See Cherry v. Thermo Electron Corp., 800 F. Supp. 508, 511 (E.D. Mich. 1992) (holding transfer was not an adverse employment decision where plaintiff "did not lose any salary or benefits, did not change his job location, and did not suffer any other adverse consequences due to his transfer"). Plaintiff did not have a change of status or lose any benefits as a result of the reassignment of some of her cases. See Exhibit C, p. 38-41. Likewise, the "Meets" rating on her annual performance appraisal is also not an adverse action. See Meredith v. Beech Aircraft Corp., 18 F.3d 890, 896 (10th Cir. 1994) (holding rating of "meets expectations" does not constitute adverse action). But see Axel v. Apfel, 171 F. Supp. 2d 522, 528-29 (D.Md. 2000) (holding lower performance appraisal could be adverse action, but finding none where plaintiffs offered only "unsupported contention that their rating should have been higher"). Accordingly, Plaintiff's claim of retaliation based upon the reassignment of cases and her performance appraisal must fail.

### ii.  Even assuming, arguendo, an adverse action, there is no causal connection between it and the protected activity

The third part of the test states that there must be a causal connection between the protected activity and the adverse action. Fennell, 83 F.3d at 535. Even assuming there were some adverse action, Plaintiff still cannot establish a causal connection between her activities as a Union Steward and the alleged adverse action. The causation element may be established by evidence that there was a temporal proximity between the behavior in question and the employee's complaint. See Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006); Noviello v. City of Boston, 398 F.3d 76, 86 (1st Cir. 2005). When asked specifically which Union activities produced the alleged retaliation response, Plaintiff could only recall activities which took place more than ten years ago. See Exhibit Q, p. 21, 26-27. Ten years is far too remote in time to support an inference of discrimination. See Ramirez Rodriguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 85 (1st Cir. 2005) ("temporal proximity between the two events–two months–was 'insufficient, standing alone, to establish a causal connection'"); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (observing that a nine-month period between protected conduct and adverse action suggested the absence of any causal connection); Burrus v. United Tel. Co., 683 F.2d 339, 343 (10th Cir. 1982) (holding that almost three years between protected activity and alleged retaliation is too long to infer retaliation).

Moreover, if there were a causal connection between Plaintiff's 10-year-old union activities and her April 1, 2000 through March 31, 2001 performance appraisal, one would expect that at least some of the intervening performance ratings would raise an inference of discriminatory intent. They do not. Plaintiff's annual performance appraisals from the years 1997 through 2000 all reflect "Outstanding" or "Superior" overall ratings. See Exhibit G, p. 19-61. The lack of a nexus between Plaintiff's protected activities and an adverse action taken by

11

the Agency indicate that Plaintiff's claim of retaliation must be defeated.  Accordingly, Plaintiff cannot establish a prima facie case of reprisal based on previous EEO activity.

### 3.     Plaintiff Cannot Establish That the Agency's Legitimate, Non-Discriminatory Reason For Its Employment Action Is Pretextual

Even assuming Plaintiff could establish a prima facie case, she cannot prove that the Agency's articulated reasons for either the case reassignments or the performance rating were pretextual.  Thomas v. Eastman Kodak Co., 183 F.3d 38, 57-58 (1st Cir. 1999); see Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 17 (1st Cir. 2006).  Tanner stated that the decision to reassign Plaintiff's cases was based "strictly on allocation of available resources to meet goals and deadlines imposed on me to complete overage cases within my group." Exhibit D, p. 2.  Agency policy states, "regions should strive to keep the number of cases older than 18 months to within no more than 25% of the total number of fiduciary cases open." Exhibit E, p. 3.  Because Plaintiff had the highest inventory of overage cases in Tanner's group and was still on a leave of absence when Tanner met with the group to discuss overage cases, he determined that Plaintiff could not complete all of her overage cases within the established time frame.  Exhibit D, p. 2; Exhibit Q, p. 98.  On the same day that Tanner reassigned some of Plaintiff's cases, he also reassigned a case from another investigator. Exhibit F, p. 1.  Tanner reassigned Plaintiff's cases to investigators who did not have an overage case problem in their inventory.  Exhibit D, p. 2; Exh. Q, p. 94-98.  Decisions to reassign cases are within a manager's discretion.  See Mesnick, 950 F.2d at 825; McCormick v. Dist. of Columbia, 554 F. Supp. 640, 645-46 (D.D.C. 1982).

With respect to the "Meets" performance rating, Plaintiff likewise fails to show that the Agency's reasons are a pretext for discrimination.  Tanner gave Plaintiff a "Meets" rating because "her overage case inventory. . . demonstrated that she fell short of exceeding this element" and because of "her need for guidance and revision on a number of cases that a

12

journeyman investigator should do independently to exceed the element." Exhibit D, p. 3. The fact that she received an "Exceeds" rating in past years does not establish that the reason for the lower rating is a pretext. See Hoffman, 439 F.3d at 18; Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 528 (3d Cir. 1992). Again, Tanner's reason for awarding her a "Meets" is a non-discriminatory and legitimate business decision. As stated before, because other investigators who were similarly situated to Plaintiff also received "Meets" ratings on their performance appraisals for the same period, this evidence undermines Plaintiff's allegations. See Exhibit H. Indeed, five of six employees in Tanner's group all received a "Meets" rating on their performance appraisals, several with a narrative specifying the high number of overaged cases as the reason for the lower rating. Id. Discriminatory intent would be suggested if Tanner used a different standard to evaluate the work of other investigators outside of Plaintiff's protected class memberships; however, these facts show that he did not use a different standard. See Thompkins v. Morris Brown Coll., 752 F.2d 558, 561-62 (11th Cir. 1985).

In conclusion, Plaintiff fails to meet the third part of the McDonnell Douglas test in that she was not treated differently than individuals who are not members of her protected groups with respect to the reassignment of her cases and the "Meets" rating on her annual performance appraisal. Therefore, Plaintiff's claims of discrimination based on age, gender, and reprisal for previous EEO activity in the reassignment of her cases and the "Meets" on her annual performance appraisal should be dismissed because Plaintiff cannot establish disparate treatment or that the Agency's proffered explanations are a pretext for discrimination.

    **B.    PLAINTIFF'S COMPLAINT ALLEGING DISCRIMINATION IN HER NON-SELECTION FOR THE GS-13 POSITION SHOULD BE DISMISSED BECAUSE SHE FAILED TO ESTABLISH A PRIMA FACIE CASE**

As to Plaintiff's second EEO complaint, she cannot produce any direct evidence of

discrimination based on age, gender, national origin, and reprisal for previous EEO activity in her non-selection for the GS-13 position; and thus, her claims are subject to the McDonnell Douglas burden shifting analysis. McDonnell Douglas, 411 U.S. at 802. Plaintiff must first establish a prima facie case of discrimination by demonstrating that: 1) she is a member of a protected group; 2) her employment situation is comparable to those of employees outside her group; and 3) she was treated differently than the individual who was not a member of her protected group. Id. Plaintiff's claims fail under this analysis as she cannot prove a prima facie case of discrimination based on age, gender, national origin, marital status, parental status, and/or reprisal for previous EEO activity, nor can she establish that the Agency's proffered legitimate, non-discriminatory reasons for its employment decision was a pretextual.

       **1.**       **Plaintiff Fails to Establish a Prima Facie Case of Age or Gender Discrimination**

Plaintiff alleges that she was discriminated against based on her age and gender in respect to her non-selection for the GS-13 position on November 24, 2001. See Exhibit J. Defendant concedes that Plaintiff meets the first two prongs of the McDonnell Douglas test in that she is a member of protected groups for both age and gender and that her employment situation is comparable to those of employees outside her group because she was qualified for the position. As to the third prong, which demands that Plaintiff be treated differently than the individual who was not a member of her protected group, her claim fails. The only evidence which Plaintiff advances is unsubstantiated opinions with no witnesses to any of the alleged statements. See Exhibit Q, p.78. Without corroborating witnesses or personnel records, Plaintiff's assertions carry no weight. Id.; see also Rivas Rosado, 312 F.3d at 534. In fact, of the six people who were promoted to the GS-13 position instead of Plaintiff, two were females over the age of forty, which is the exact category that Plaintiff herself is in. See Exhibit K, p. 3. Plaintiff simply lacks

"evidence adequate to create an inference that an employment decision was based on [an illegal] discriminatory criterion." Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977). Because Plaintiff cannot demonstrate that she was treated differently than people not in her protected groups, she fails to establish a prima facie case of age and gender discrimination.

### 2. Plaintiff Fails to Establish a Prima Facie Case of National Origin Discrimination[10]

Under the McDonnell Douglas test, Plaintiff meets the first two prongs; however, she fails under the third prong because she cannot establish disparate treatment on account of her national origin. Plaintiff's only evidence regarding alleged discrimination on national origin is that James Benages addressed her as "Hey Irish" on several occasions. See Doona Affidavit, (Exhibit R, p. 22). Not only does James Benages deny ever saying anything derogatory to the Plaintiff, but also, and more important, the record is devoid of any evidence of Plaintiff's unsubstantiated allegations. See Exhibit K, p. 7. This innocuous comment does not suffice to raise an inference of discrimination. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996) (explaining that direct evidence does not include stray remarks made in the workplace). Plaintiff produces no witnesses or documentation of discrimination based on national origin. Indeed, the record is replete with evidence that supports a contrary assertion. Four of the six selectees for the GS-13 position were of Irish origin. See Exhibit K, p. 3. In the office as a whole, there are three Irish Supervisors, one of which is Plaintiff's direct supervisor

---

[10] Because Plaintiff did not allege discrimination based on national origin in the formal complaint, Defendant maintains that she has waived her right to assert it as a claim here. See Exhibit J, p. 1. However, Plaintiff asserted the claim in her informal complaint, and the Agency accepted the claim for investigation. Nevertheless, based on the investigation, the Defendant contends that Plaintiff's claim of national origin discrimination in her non-selection for the GS-13 position is without merit and should be dismissed.

Tanner, and seven Senior Investigators who are of Irish descent. Id. at 13.

Plaintiff cannot establish disparate treatment on the basis of her national origin with respect to her non-selection for the GS-13 Senior Investigator position. Thus, her claim of national origin discrimination must fail as a matter of law.

### 3. Plaintiff Fails to Establish a Prima Facie Case of Reprisal for Previous EEO Activity

Plaintiff asserts that she was retaliated against for her previous EEO activity as a Union Steward and for her previous EEO complaint #1 (informal complaint filed July 11, 2001). See Exhibit J, p. 1. To establish retaliation claim, Plaintiff must prove that: 1) she participated in a protected activity; 2) the Agency has taken an adverse action against her; and 3) there is a causal connection between the protected activity and the adverse action. Fennell, 83 F.3d at 535.

The government will assume for purposes of this motion that Plaintiff meets the first prong of the test, i.e., that Plaintiff participated in a protected activity in her capacity as a Union Steward and also for filing a past grievance against the Agency. See Hashimoto v. Dalton, 118 F.3d 671, 680 (9th Cir. 1997); Exhibit A, p. 2; Exhibit Q, p. 17. The government also does not contest that the non-selection for GS-13 level could be considered an adverse action. Nevertheless, Plaintiff still fails to meet the third prong of the test because she cannot establish a nexus between the protected activity and the alleged adverse action.

To establish this causation element, Plaintiff may present evidence that there was a temporal proximity between the protected activity and the adverse action. See Quiles-Quiles, 439 F.3d at 8; Noviello, 398 F.3d at 86. Plaintiff failed to demonstrate exact dates of protected activity and only referred to activities which took place approximately ten years before the non-selection for the GS-13 position. See Exhibit Q, p. 21-22; 26-27. Indeed, the protected activity that Plaintiff does describe took place in the early to mid-1990s, far before Plaintiff's non-

16

selection for the GS-13 position.  See Exhibit Q, p. 21; see also Ramirez, 425 F.3d at 85 ("temporal proximity between the two events–two months–was 'insufficient, standing alone, to establish a causal connection'"); Mesnick, 950 F.2d at 828 (nine-month period between protected conduct and adverse action suggested the absence of any causal connection); see Oliver v. Digital Equip. Corp., 846 F.2d 103, 110-11 (1st Cir. 1988) (two years between filing of EEOC complaint and discharge too long to support inference of adverse action); McMillan v. MSPCA, 880 F. Supp. 900, 909 (D. Mass. 1995) (same); see also Burrus, 683 F.2d at 343 (three years between protected activity and alleged retaliation is too long to infer retaliation).  In fact, in the intervening years, Plaintiff did not complain about any adverse actions at all.  See Exhibit R, p. 18-19.  At her deposition, Plaintiff refused to present evidence as to what specifically caused discrimination against her as a result of the protected activity.  See Exhibit Q, p. 27.

Furthermore, more than a scintilla of evidence is needed to support a claim of retaliation. Lapsed v. Univ. of Puerto Rico, 864 F.2d 881, 895 (1st Cir. 1988).  Plaintiff's blanket assertions of retaliation convey only conclusory statements that are not supported by evidence.  This lack of direct evidence of a nexus between the protected activity and the alleged adverse action does not rise to the level of a prima facie showing of discrimination based on reprisal for previous EEO activity, and thus, fails as a result.

    **4.**    **Plaintiff Cannot Establish That the Agency's Legitimate, Non-Discriminatory Reason For Its Employment Decision Is a Pretext For Discrimination**

Even if the Court determined that Plaintiff established a prima facie case of discrimination, Plaintiff still cannot prove that the Agency's stated reason was a pretext for discrimination.  Once Plaintiff has shown a prima facie case of discrimination, the burden then shifts to Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's

17

rejection." McDonnell Douglas, 411 U.S. at 802. James Benages, the sole hiring official, articulated that the six selectees' "contributions to the Boston Regional Office are considerably more significant than those of the complainant" as the reason that Plaintiff was not hired for the GS-13 position over the six selectees. See Exhibit K, p. 3. Benages also denies that age and gender were factors in his employment decision. Id. at 7. Because the Agency has articulated a non-discriminatory reason for its non-selection of the Plaintiff and the Plaintiff cannot establish that this reason was a pretext for discrimination, summary judgment enter for the Agency.

Plaintiff cannot establish that her qualifications are plainly superior to the selectees. See Exhibit Q, p. 87-90; Exhibit K, pp. 3-7; Rathbun v. Autozone, Inc., 361 F.3d 62, 76-77 (1st Cir. 2004) (holding female employee's assertions that she was more qualified than male applicants who received management positions was insufficient to support an inference of pretext). In fact, James Benages conveyed specific legitimate, good faith reasons for his hiring of the six selectees. See Exhibit K, pp. 3-7. His reasons included that she did not work on complex cases, she had the lowest "hit ratio" within his group (ratio of cases closed with results to total cases closed); and she had the longest "unit time" within his group (the time it takes to complete a case). See Exhibit K, pp. 16-18. Moreover, this employment decision is a business decision, and therefore, completely within the discretion of James Benages as the sole hiring official. See Mesnick, 950 F.2d at 825; Texas Dept. of City. Affairs v. Burdine, 450 U.S. 248, 259 (1981) (stating "the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria"); see also Ruby v. Springfield R-12 Pub. Sch. Dist., 76 F.3d 909, 912 n.7 (8th Cir. 1996) (inquiry on pretext limited to whether employer gave "honest explanation of its behavior, rather than to weigh the wisdom of any particular employer decision; Title VII does not authorize federal courts to sit as a super-personnel department that

reexamines an entity's business decisions") (internal citations omitted).

Plaintiff also claims that the six people selected for the position had "much less seniority." See Exhibit R, p. 17; Exhibit Q, pp. 87-88. As stated before, seniority and having a law degree were not factors in the promotion decision as they were not required by the position description. See Exhibits L & M. Indeed, James Benages also did not promote other people who have law degrees including Michael Fontenot, Christine Heatley and James Shanahan, all of whom applied for the position and were marked as qualified on the Certificate of Eligibles. See Exhibit C, pp. 6-8; see also Certificate of Eligibles for Vacancy Announcement BOS 01-92, (Exhibit S). Furthermore, James Benages declared that there were no other requirements for the position outside of those listed in the Vacancy Announcement and Position Description. See Exhibit K, p. 2.

Plaintiff fails to cite any objective evidence that proves she was more qualified for the GS-13 position than the six selectees. See Exhibit Q, p. 87-88. Without more than Plaintiff's mere assertions of qualification, "proof of competing qualifications will seldom, in and of itself, be sufficient to create a triable issue of pretext." Rathbun, 361 F.3d at 74 (citations omitted). Indeed, Plaintiff's subjective belief that she was more qualified than the other applicants does not demonstrate an inference of discriminatory pretext. Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 15 (1st Cir. 1998). Furthermore, Plaintiff's qualifications must be "so obviously superior to those of the successful. . . applicant as to undermine the legitimacy of the selection process." Rathbun, 361 F.3d at 75. Here, Plaintiff has not met this burden. Thus, her claims must fail as a matter of law.

Plaintiff has also not demonstrated that she was treated differently than individuals who are not members of her protected groups with respect to her non-selection of the GS-13 position.

19

See McDonnell Douglas, 411 U.S. at 802.  Indeed, the same facts that undercut the third prong of Plaintiff's prima facie case also destroy her claim of pretext.  One of the selectees for the position was similarly situated to the Plaintiff–she was an over forty, Irish female with children.  See Exhibit K, p.3.  Also, two of the six selectees were females over the age of forty; and four of the six selectees were of Irish descent.  Id.  Plaintiff cannot prove disparate treatment or pretextual discrimination based on her age, gender, national origin, marital, parental status or retaliation.  Thus, in the absence of any "evidence from which a reasonable jury could infer, without the most tenuous insinuation," Mesnick, 950 F.2d at 826, that the Agency's legitimate, nondiscriminatory reasons for its employment decisions were pretexts for discrimination, the Defendant is entitled to summary judgment on Plaintiff's retaliation claims.  See Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21-22 (1st Cir. 1999).

## V.    CONCLUSION

For the foregoing reasons, this Court should enter summary judgment for the Defendant dismissing Plaintiff's Complaint in its entirety.

    Respectfully submitted,

    ELAINE CHAO, Secretary,
    U.S. DEPARTMENT OF LABOR
    By her attorney,

    MICHAEL J. SULLIVAN
    United States Attorney

By:  /s/Eugenia M. Carris
    Eugenia M. Carris
    Assistant United States Attorney
    U.S. Attorney's Office
    1 Courthouse Way, Suite 9200
    Boston, MA 02210

Dated:  April 21, 2006    (617) 748-3282